**UNITED STATES DISTRICT COURT
NORTHERN DISTRICTOF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **ISAIAS SANCHEZ,** | ) | |
| | ) | |
| Plaintiff, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| v. | ) | |
| | ) | |
| **SUN CHEMICAL CORPORATION,** | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff, Isaias "Isaac" Sanchez ("Sanchez" or "Plaintiff"), by his attorneys, The Karmel Law Firm, brings this lawsuit against Defendant, Sun Chemical Corporation ("Sun" or "Defendant"), and states as follows:

## INTRODUCTION

1. Plaintiff is seeking redress for the hostile work environment based on sexual his orientation he was subjected to for years while he worked at Sun's facility in Northlake, Illinois, and for retaliation he faced in response to his complaints within Sun and to the Equal Employment Opportunity Commission ("EEOC") in violation of his rights protected by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 *et seq*.

2. During the course of his employment, and because he is an openly gay man, among other things, Sanchez was called a "f***ing faggot" and other severe and hostile slurs by coworkers, mocked by his supervisors about his sexual orientation despite his repeated requests that the harassment stop, and physically assaulted by a coworker and forced to work with the coworker after reporting the assaults and while the assaults continued.

3.  Sanchez's supervisors set the tone for the hostile work environment Sanchez suffered by stereotyping gay men and speaking to him in a high pitched, effeminate voice, waving to him with "spirit fingers" and laughing at and dismissing his complaints about the harassment he suffered. Among other severe and hostile slurs, Sanchez's supervisors told coworkers to "bend over" and let Sanchez "take their temperature," and asked "who is top and who is bottom" when Sanchez engaged in a friendly conversation with a coworker.

4.  Sanchez repeatedly complained to his immediate supervisors and to higher level management at Sun. In response Sanchez was told he was "hearing things" and he was the "common denominator" for the problems he was facing. Sanchez was left without redress and threatened with termination if he continued to complain, despite the ongoing harassment.

5.  Rather than punish the perpetrators, Sun terminated Sanchez on pretextual grounds and in retaliation for filing with the EEOC.

## JURISDICTION

6.  This Court has jurisdiction over Sanchez's federal claims pursuant to 28 U.S.C. § 1331.

7.  This Court has jurisdiction over Sanchez's state law claims pursuant to 28 U.S.C. § 1367.

## VENUE

8.  Venue is proper in this district under 28 U.S.C. §1391(b) as all the events occurred within Cook County and all parties reside or maintain their place of business within Cook County.

## PARTIES

9. Sanchez is a citizen of the State of Illinois and resides in Berwyn, Illinois.

10. Sun is a Delaware corporation with its principal place of business in New Jersey. Sun operates a Regional Headquarters for its North America Inks division from 135 West Lake Street in Northlake, Illinois 60164. Sun is part of the DIC Group, which is based in Tokyo, Japan. Sun has more than 100 employees.

## FACTS

### a. Exhaustion of Administrative Remedies.

11. On December 30, 2020, Sanchez filed a Charge of Discrimination ("Charge") with the EEOC against Sun alleging sex and sexual orientation based discrimination. On March 16, 2021, Sanchez filed a second Charge alleging retaliation for filing his first Charge. On October 14, 2021, Sanchez filed an amended charge to include allegations concerning his retaliatory discharge on September 13, 2021.

12. Sanchez was issued right to sue letters by the EEOC on October 27, 2021 and October 28, 2021.

### b. Sun's Hostile Work Environment for Sanchez.

13. Sanchez is a 44-year-old openly gay man. He was hired by Sun as a Batch Maker/Filler in June 2016 and was employed by Sun until his termination on September 13, 2021. Sanchez is an experienced industrial worker and, at Sun, prepared inks for commercial printing and performed other tasks. Sanchez satisfactorily performed his job at all times.

14. Sanchez was the only openly gay person on the factory floor. Soon after he began working at Sun, he began to experience harassment based on his sexual orientation.

15. Throughout Sanchez's employment, Scott Grigsby ("Grigsby") was one of his supervisors and regularly made stereotyped and demeaning references to Sanchez's sexual orientation. Grigsby frequently spoke to Sanchez in a higher-pitched effeminate voice, shook his hips when he walked, waved to Sanchez with "spirit fingers," and impersonated and stereotyped gay men generally, and Sanchez, in particular.

16. For example, in response to a routine workplace interaction involving Sanchez, Grigsby said to Sanchez referring to a male coworker, "Aww, now you have to buy him dinner, but what is for dessert." On other occasions, Grigsby asked Sanchez, "You need help putting it in?" and then laughed. When Sanchez spoke with a male coworker, Grigsby asked, "Who is top and who is bottom?"

17. Sanchez repeatedly asked Grigsby to stop making hostile comments, but Grigsby refused, and retaliated by berating Sanchez, by assigning him more difficult and onerous tasks, and targeting him for discipline.

18. Grigsby referred to Sanchez as "that f***ing faggot" to other coworkers.

19. Another supervisor, Tim Keippel ("Keippel"), demeaned Sanchez with anti-gay references and slurs.

20. Keippel frequently referred to Sanchez's sexual orientation, and asked Sanchez if another employee had shown him "how to put it in?" Keippel referred to Sanchez and a coworker as "love birds," and laughed when Sanchez complained about writing on the floor, "IS" [referring to Sanchez] loving a straight male coworker.

21. In 2019, Steve Allen, a coworker, was taken from work to the hospital after becoming ill at work. Allen had his stomach pumped. When he returned, Keippel asked Allen if the hospital had found "some Isaac in you?"

22. Sanchez was also repeatedly harassed, abused, and even assaulted by his coworkers because of his sexual orientation.

23. In 2018, John Neal, a coworker, called Sanchez a "f***ing faggot." Sanchez complained to Keippel. In response, Keippel asked if Sanchez would overlook the complaint because it was a lot of paperwork for him.

24. Neal also harassed Sanchez in the employee locker room, threatening to throw his "sh*t" on the floor. Sanchez complained about this to Human Resources ("HR") and, as a result, Sanchez's locker was moved.

25. Neal continued to harass Sanchez when they saw each other in the workplace. In response to his complaints about Neal, Sanchez was told by Jim Burke, the Sun official handling the complaint, that Sanchez faced termination if the issues with Neal did not cease.

26. Throughout his employment, Sanchez's coworker Alvin Brown harassed and physically abused Sanchez because of his sexual orientation. Among other things, Brown called Sanchez a "f***ing faggot," and told him being gay was not what was intended or right in God's eyes. Brown repeatedly got in Sanchez's face and menaced him physically.

27. Sanchez repeatedly escalated his complaints to Priscilla Melo ("Melo"), the Northlake Plant Human Resources Manager. When Sanchez complained to Melo, she sighed and shook her head. The hostile work environment remained unchanged.

28. In late January 2020, Brown physically assaulted Sanchez, grabbing his throat and pushing him, nearly causing him to hit a pallet stacked with metal drums.

5

Sanchez complained to Keippel who laughed and asked if the incident could be squashed so he did not have to write a report.

29. Sanchez also reported the assault to Melo. The next day Melo suspended Sanchez and Brown for three days even though Sanchez did not assault Brown or initiate the assault.

30. Sanchez complained about the assault and the hostile workplace environment to Jeffrey Gallisdorfer, Sun's Director of Operations. Gallisdorfer told Sanchez he would look into his complaint, but no action was taken to protect Sanchez and punish his abusers.

31. Despite being aware of Brown's violent behavior towards Sanchez, Sun continued to assign Sanchez to work with Brown throughout his employment, even as the abuse continued.

### c. Sanchez Complains in Writing in Fall 2020.

32. Sanchez continued to be targeted for harassment in Fall 2020. Grigsby continued to make slurs referring to Sanchez's sexual orientation and turning routine interactions with Sanchez into an opportunity to demean his sexual orientation.

33. When Sanchez repeatedly asked Grigsby to stop, Grigsby would retaliate by belittling Sanchez or falsely claiming deficiencies in his work. Among other things, in the context of COVID-19 related temperature checks, Grigsby told a coworker to bend over and Isaac can take your temperature.

34. Sanchez complained verbally to Melo about Grigsby on or about September 29, 2020. Melo said she would talk with Grigsby and his supervisor, Eric Senase ("Senase"), the Production Superintendent. A week later, receiving no response, Sanchez

6

asked Senase if he had heard from Melo about his complaint. He had not. As a result, Sanchez submitted a written complaint to Senase.

35. Sanchez's complaint noted Grigsby harassed him over time and made "gay comments and movements/gestures" toward him including speaking and acting in a stereotypically gay manner toward Sanchez. He also noted every conversation he had with Grigsby "always turns into something gay or sexual gay," and that Grigsby would laugh. Sanchez also wrote, "I have asked and told him numerous times to stop but [he] stops at that moment until he sees me again. When asked to stop he then proceeds to harass me on anything possible." Sanchez wrote he previously complained to HR about Grigsby's behavior.

36. Sanchez wrote to Christian Johnson ("Johnson"), Sun's Human Resources Director, and again raised concerns about the hostile work environment he suffered. Sanchez wrote to Johnson:

> "Everyday, up until recently when I just stopped talking to him, Scott would give me the, as they were called Spirit Fingers wave, start talking to me in a tone of voice that has a gay accent and especially when I'm conversation turn everything into some kind of sexual content. When I ignore him and not say anything he still tends to come to me and try and talk to me and when I say I don't want to talk he keeps pushing it."

He further wrote that his prior complaints about harassment by his coworkers had not resulted in any changes to his workplace

37. In response to Sanchez's written complaints about the pervasive and severe harassment, Sanchez was told Melo had a "stern talk" with Grigsby.

38. Following closely on his complaints, the workplace became more hostile, from both Sanchez's direct supervisors and from HR and management. For example, Sanchez was harassed by Keippel, who screamed at him and pressured him to perform

7

tasks contrary to procedures and protocols. On another occasion, when Sanchez went to Keippel's office to ask a work question, Keippel physically grabbed him, pushed him out of the office, and slammed the door in his face. Sanchez reported these incidents, to HR and Senase, but no action was taken to protect Sanchez.

39. Instead, Sanchez was blamed for the retaliatory incidents following his recent complaints and threatened with discipline if he continued to complain.

40. Later in October 2020, Keippel made another slur about Sanchez's sexual orientation. He told Sanchez, "Billy needs you to help him hold his hose" and then laughed. Sanchez walked away and reported the incident to Melo but, again, Sun failed to protect Sanchez from the hostile work environment he suffered.

41. Sanchez also wrote to other Sun officials seeking redress, but he was not protected.

### d. Hostile Work Environment and Ongoing Retaliation in 2021.

42. Receiving no protection and relief from the hostile work environment at Northlake, Sanchez filed a Charge with the EEOC claiming discrimination based on his sex and sexual orientation on December 30, 2020.

43. After Sanchez filed his Charge, Sun continued to retaliate against and threaten Sanchez, subjecting him to an ongoing hostile work environment. The hostile work environment included both disparate discipline issued against Sanchez for purported attendance violations, as well as ongoing harassment by coworkers and retaliation by Sun management.

44. Sanchez continued to suffer harassment and physical assaults from Brown, who among other things, called him a "b**ch" and, on multiple occasions would lower his

shoulder into Sanchez. By further example, Brown intimidated Sanchez by closely following him around the workplace and stood near him with no apparent work purpose.

45. Despite Sanchez's requests not to be assigned to work near Brown, Keippel continued to assign Sanchez to work near Brown. For example, in April of 2021, when Keippel assigned Brown and Sanchez to work together taking inventory, Brown called him a "f***ing faggot."

46. Sanchez later asked Melo and Samir Shah, Senior Production Manager, to work away from Brown, but his request was denied. Sanchez reported Brown's ongoing harassment but was threatened with insubordination if he did not acquiesce to working next to Brown.

47. In June of 2021, Sanchez complained to Keippel that Brown said "f*ck you" and nearly struck him with a forklift. In response, Keippel laughed. Sanchez reported this incident to Johnson who blamed Sanchez.

48. Sun never protected Sanchez from the ongoing sexual orientation based bullying and physical assaults by Brown.

### e. Sanchez Files with the EEOC and is Terminated.

49. Sun received notice of Sanchez's EEOC Charge soon after it was filed on December 30, 2020.[1]

50. Having learned of the Charge, Sun began to enforce its attendance policy against Sanchez in a disparate manner by untimely issuing Sanchez attendance occurrences in conflict with its attendance policy, treating him differently than his similarly situated peers, and otherwise failing to follow its standard practices and procedures.

---

[1] Sun filed its Position Statement with the EEOC on February 4, 2021.

51. On March 16, 2021, Sanchez filed an additional Charge alleging retaliation for his prior protected conduct.

52. Sanchez was terminated on September 13, 2021. The termination letter states he was terminated because "you have accumulated 5 points for attendance in violation of Sun Chemical policy."

53. Sanchez amended his Charge on October 14, 2021 with the EEOC to add his retaliatory termination.

54. Unlike similarly situated workers, Sanchez was not provided a last chance agreement or other arrangement to allow him to remain employed. On information and belief, last-chance agreements are frequently granted to Sun employees who exhaust their five attendance-based points.

## Count I
## Sexually Hostile and Abusive Work Environment
## Title VII of the Civil Rights Act of 1964

55. Sanchez hereby repeats and realleges each and every allegation in each preceding paragraph as if fully set forth herein.

56. Sanchez was subjected to ongoing unwelcome harassment, abuse, and violence during his employment at Sun because of his sex and sexual orientation.

57. The harassment and abuse by his coworkers and by Sun supervisors was so severe and pervasive that it altered the conditions of Sanchez's employment and created an abusive hostile work environment.

58. As a result of Defendant's unlawful actions, Plaintiff has suffered and continues to suffer inconvenience, lost wage and benefits, future pecuniary losses, and other consequential damages and is entitled to punitive damages and attorneys' fees.

## Count II
## Sexual Orientation Discrimination
## Title VII of the Civil Rights Act of 1964

59. Sanchez hereby repeats and realleges each and every allegation in each preceding paragraph as if fully set forth herein.

60. Title VII makes it unlawful for employers to discriminate against an employee based on sexual orientation.

61. Defendant had knowledge that Sanchez was a gay man.

62. As detailed above, Defendant subjected Sanchez to ongoing and unwelcome verbal and physical abuse based on his gender and sexual orientation. Additionally, Defendant took adverse employment action against Sanchez by assigning him more difficult tasks, subjecting him to ongoing sexual and physical harassment, and terminating him based on his sexual orientation.

63. The actions of Defendant were intentional, willful, and malicious and/or in deliberate indifference for Plaintiff's rights as secured under Title VII.

64. As a result of Defendant's unlawful actions, Plaintiff has suffered and continues to suffer inconvenience, lost wage and benefits, future pecuniary losses, and other consequential damages and is entitled to punitive damages and attorneys' fees.

## Count III
## Sex Stereotyping
## Title VII of the Civil Rights Act of 1964

65. Sanchez hereby repeats and realleges each and every allegation in each preceding paragraph as if fully set forth herein.

66. Sun treated Sanchez differently in his employment because he did not conform to sex stereotypes because of his sexual orientation.

11

67. As a result of these sex stereotypes, through its managerial personnel and failure to correct hostile conduct by its employees, Sun subjected Sanchez to a hostile work environment by harassing Sanchez, by not investigating or taking his complaints seriously, and ultimately by terminating him.

68. As a result of Defendant's unlawful actions, Plaintiff has suffered and continues to suffer inconvenience, lost wage and benefits, future pecuniary losses, and other consequential damages and is entitled to punitive damages and attorneys' fees.

## Count IV
## Failure to Investigate
## Title VII of the Civil Rights Act of 1964

69. Sanchez hereby repeats and realleges each and every allegation in each preceding paragraph as if fully set forth herein.

70. Sanchez made repeated complaints to Sun managerial employees about the hostile work environment, abuse by coworkers and supervisors, and disparate treatment.

71. Despite having actual and constructive knowledge of Sanchez's complaints and of the unlawful hostility to Sanchez from coworkers and supervisors, Sun ignored and failed to properly investigate Sanchez's complaints.

72. Sun ignored or disregarded Sanchez's complaints, claimed he was "hearing things," and threatened him with retaliation, including up to termination, if he continued to complain.

73. When Sun did respond to Sanchez's complaints, those investigations were inadequate and failed to redress the hostile work environment.

74. As a result of Sun's failure to investigate, Sanchez was subjected to years of a sexually hostile work environment which adversely changed the terms and conditions of his employment.

75. As a result of Defendant's unlawful actions, Plaintiff has suffered and continues to suffer inconvenience, lost wage and benefits, future pecuniary losses, and other consequential damages and is entitled to punitive damages and attorneys' fees.

### Count V
### Retaliation
### Title VII of the Civil Rights Act of 1964

76. Sanchez hereby repeats and realleges each and every allegation in each preceding paragraph as if fully set forth herein.

77. Sanchez engaged in protected conduct by making complaints to his supervisors, other Sun management, and the EEOC about the unlawful harassment and abuse he suffered as a result of his sexual orientation.

78. As a result of Sanchez's protected conduct, Sun took adverse employment actions against Sanchez including failing to remedy the sexually hostile work environment, failing to investigate his complaints, and ultimately terminating his employment.

79. As a result of Defendant's unlawful actions, Plaintiff has suffered and continues to suffer inconvenience, lost wage and benefits, future pecuniary losses, and other consequential damages and is entitled to punitive damages and attorneys' fees.

### Count VI
### Negligent Supervision

80. Sanchez hereby repeats and realleges each and every allegation in each preceding paragraph as if fully set forth herein.

81. Sun had a duty to supervise its employees, including Brown, Neal, Grigsby and Keippel.

82. Sun negligently supervised these employees, despite receiving notice of their unlawful conduct, and failed to prevent ongoing unlawful conduct.

83. Sun's negligent supervision of these employees caused Sanchez to be subjected to harassment and physical assaults.

## Count VII
### Negligent Retention

84. Sanchez hereby repeats and realleges each and every allegation in each preceding paragraph as if fully set forth herein.

85. Sun had a duty to supervise its employees, including Brown, Neal, Grigsby and Keippel.

86. Sun knew or should have known these employees had a particular unfitness for their positions that created a danger of harming others, namely Sanchez.

87. Sun was aware of the unfitness of these employees and nevertheless continued their employment.

88. These individual employees' unfitness was the proximate cause of Sanchez's injuries, including subjecting him to harassment and physical assaults.

## JURY TRIAL DEMANDED

The Plaintiff respectfully requests that a jury decide all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Isaias Sanchez, respectfully requests the Court enter judgment against Defendant, Sun Chemical Corporation, and award him the following relief:

a. Declaratory and injunctive relief, including but not limited to reinstatement;

b. Compensatory damages, including but not limited to lost wages and future earning opportunities;

c. Punitive damages;

d. Attorneys' fees and costs;

e. All other relief this Court deems just.

Respectfully submitted,

/s/ Jonathan D. Karmel
Attorney for Isaias Sanchez

/s/ Joseph C. Torres
Attorney for Isaias Sanchez

Karmel Law Firm
20 S. Clark Street
Suite 1720
Chicago, Illinois 60603
Phone: 312-641-2910
Fax: 312-641-0781
jon@karmellawfirm.com
joe@karmellawfirm.com